## SUTHERLAND *v.* TROY & B. R. CO.

*(Supreme Court, General Term, Third Department.　December 11, 1889.)*

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE OF MASTER.

In an action against a railroad company for the negligent killing of plaintiff's intestate, who was the engineer of defendant's train No. 1, it appeared that the trains were controlled by the train dispatcher. A telegraph operator at P., who was also subject to the train dispatcher's orders, received an order to "flag and hold train 1 for orders," whereupon he displayed a red flag, which no train is permitted to pass. He next heard at his instrument an order to train No. 2 to meet No. 1 at P. When No. 2 reached P. he was ordered to advance it one station in the direction of the approaching No. 1, to which station a like order was sent; whereupon he removed the red flag at P., and No. 2 advanced to and stopped at the designated station, where No. 1 passed it without being signaled to stop. The operator at P. did not replace the red flag, supposing that the latter order had superseded the former. Between P. and the next station No. 1 collided with an approaching train. The train dispatcher had stopped No. 1 before it reached these stations without instructing decedent where to stop, as he might have done, knowing that his train was delayed, and that a train from the opposite direction was due about that time. *Held*, that it was for the jury to determine whether defendant was negligent in failing to take additional precautions to inform decedent of its orders.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Notwithstanding that all trains were controlled by the dispatcher, it is for the jury to say whether decedent ought not to have stopped in the absence of the red flag, as he knew that, according to schedule, a train from the opposite direction was due at P. within a few minutes after his arrival there.

3. SAME—VIOLATION OF MASTER'S RULES.

The rule that "the speed of freight trains must not exceed 15 miles per hour, exclusive of stops, except in cases where schedules are run faster," is not violated by occasionally running at greater speed, provided the rate does not exceed 15 miles in an hour of actual running time; and where the evidence shows that freight

trains are accustomed to run at greater speed down grade. to make up for lost time, and that defendant's road is up and down grade for 7⅓ miles before the place of the collision, it cannot be said that decedent violated the rule by running at greater speed.

4. SAME—CONFLICT OF RULES.

Where it appears, if decedent did not run his train faster than the rules of the company allowed, he could not reach P. in time to get to the next station without violating the rule that freight trains must keep 10 minutes out of the way of passenger trains, and that decedent had just left P. when an order was about to be sent to stop there, it is a question for the jury whether decedent was guilty of contributory negligence in failing to stop, notwithstanding the absence of any signal, and a finding for plaintiff is supported by the evidence.

5. SAME—FELLOW-SERVANTS.

Where it is contended that the operator, who was a fellow-servant of decedent, was negligent in failing to replace the red flag after train No. 2 had passed P., and the evidence shows that he was 17 years of age, of good intelligence, and had properly performed his duties for three or four months, the question of his competency is for the jury.

Appeal from circuit court, Rensselaer county.

-Action by Rebecca Sutherland, as administratrix, etc., of Mark Sutherland, deceased, against the Troy & Boston Railroad Company, for the alleged negligent killing of plaintiff's intestate. Verdict for plaintiff, and from the judgment thereon, and an order denying a motion for a new trial, defendant appeals.

Argued before LEARNED, P. J., and PUTNAM and LANDON, JJ.

*Edgar L. Fursman,* for appellant.   *Warren, Patterson & Gambell,* (*Charles E. Patterson,* of counsel,) for respondent.

LANDON, J.' The movement of trains upon the defendant's railroad was controlled by the train dispatcher at Troy by means of telegrams sent to the operators at the several stations. The train dispatcher performed the service of the master. Johnson was the defendant's operator at Petersburgh Junction. He performed a servant's service, and was a fellow-servant of Sutherland, the plaintiff's intestate. Sutherland was the engineer in charge of the locomotive drawing train No. 1 from Troy easterly, successively past stations Hoosick Falls, Hoosick, Petersburgh Junction, towards North Pownall and ° stations further east. Train No. 1, an express freight train, was two hours behind its schedule time. It reached and passed Petersburgh Junction at 8:30 A. M. At 6:55 A. M., Johnson, the defendant's operator at Petersburgh Junction, received from the train dispatcher the following order: "Flag and hold train 1 for orders." Johnson, as was his duty, thereupon put out a red flag. No train is permitted to pass a red flag. Johnson, at his instrument, next heard an order to train No. 2 to meet train No. 1 at Petersburgh Junction. Train 2 was at or beyond some station east of Petersburgh Junction, and was moving west. At 7:19 A. M. train No. 2 reached Petersburgh Junction, and stopped. Next Johnson received from the train dispatcher an order for train 2 to meet train 1 at Hoosick, a station one and a half miles west of Petersburgh Junction. The like order was sent by the train dispatcher to the operator at Hoosick Falls, the station next west of Hoosick, for train No. 1. , Johnson thereupon took down the red flag at Petersburgh Junction, and train No. 2 moved on west, and took the side track at Hoosick, and stopped. Train No. 1 next reached Hoosick, and, as there was no signal for it to stop, it passed the station and train No. 2 without stopping. Johnson did not replace the red flag at Petersburgh Junction. He supposed that the order to "flag and hold No. 1 for orders" was for the purpose of enabling Nos. 1 and 2 to pass each other at Petersburgh Junction, and, since those trains had subsequently been ordered to pass each other at Hoosick, he assumed that the order had been superseded by the later order, and he therefore did not replace the red flag. At least, such is the finding of the jury upon evidence sufficient to support it.

We held, upon a former appeal, that it was a question for the jury, upon the evidence, whether the defendant was guilty of any omission of duty in not taking additional precautions to bring the knowledge of its order to the engineer of train No. 1. 46 Hun, 372. The evidence upon the retrial is in this respect unchanged, and we adhere to the ruling. Train No. 1 was stopped by the dispatcher's order at Hoosick Falls. The dispatcher might there have told the engineer where to meet No. 6, or where next to stop for orders. It was about 7:25 A. M. when train No. 2 passed Petersburgh Junction, westerly, to meet train No. 1 at Hoosick. Train No. 1 did not reach Petersburgh Junction until 8:30 following, having been delayed, as the dispatcher knew, by the inability of the locomotive to haul the entire train over and up grade there, and thus was compelled to separate it in two divisions.

The defendant contends that Sutherland, the engineer, ought to have stopped at Petersburgh Junction, notwithstanding the absence of the red flag. This contention is based upon the fact that, according to the regular schedule, passenger train No. 33, moving east, and freight train No. 6, moving west, were appointed to meet each other at Petersburgh Junction at 8:52 A. M., and that Sutherland knew this. The answer, the sufficiency of which it was for the jury to consider, is that, notwithstanding the schedule, the movement of all these trains was controlled by the train dispatcher at Troy. He knew where trains No. 33 and No. 6 were, whether on or behind time, and it was his duty to give to every train the proper orders. For Sutherland to stop at Petersburgh Junction without orders was for him to interfere with the dispatcher's business and directions.

The defendant further urges that Sutherland ran train No. 1 from Hoosick Falls, past Hoosick and Petersburgh, at a rate of speed forbidden by a rule of the company. The rule relied upon is: "The speed of freight trains must not exceed fifteen miles per hour, exclusive of stops, except in cases where schedules are run faster than 15 miles an hour." This means that no more than 15 miles shall be run in an hour of actual running time,—not that at no time within the hour shall the highest speed exceed 15 miles an hour. From Hoosick Falls to the place of collision is $7\frac{1}{2}$ miles. Sutherland ran train No. 1 faster than at the rate of 15 miles an hour after he made a successful start from Hoosick Falls. It is plain that, in starting the train and in approaching its stop, the train must run much less than at the rate of 15 miles an hour, and therefore to make 15 miles in an hour it must run faster than at that rate some portion of the distance between stops. The testimony showed that it was well understood that, when a freight train was running down grade, it would run faster than at that rate. From Hoosick Falls to the place of the collision it is both up and down grade, with a considerable portion nearly level. Sutherland probably availed himself of favorable grades to make up for some of the time he had lost at Hoosick Falls. As the collision occurred before the 15 miles east of Hoosick Falls were completed, we cannot know whether this rule was violated.

Another rule is urged by the defendant, namely: "Freight trains must in all cases keep ten minutes out of the way of passenger trains." Now, train No. 33 was a passenger train, running east from Troy, and due at Petersburgh Junction at 8:52 A. M. It is urged that, if Sutherland had not run train No. 1 too fast east of Hoosick Falls, he would have reached Petersburgh Junction not more than $10\frac{1}{2}$ minutes before 8:52 A. M., and hence could not have reached the next station east of that station 10 minutes in advance of the passenger train, and therefore should, in obedience to the 10-minutes rule, have stopped at Petersburgh Junction to allow the passenger train to pass him. Evidence was also given showing that, just after Sutherland passed Petersburgh Junction, the train dispatcher started to send an order to the operator there for trains 1 and 6 to pass each other there, but was advised by the operator that train No. 1 had just passed. If Sutherland had stopped

at Petersburgh Junction for the passenger train, or had arrived there after the delayed order to meet No. 6 there had been dispatched, the collision would not have occurred. The question is, was he guilty of negligence or misconduct contributing to his own death? The jury considered the circumstances: Sutherland was behind time with his train. He was running in obedience to the dispatcher's orders. He was to stop for these wherever he saw a red flag. He did not know where the other trains were. He knew that the dispatcher did. Doubtless, where he had a good opportunity to make speed he made it, relying upon his being reported from the stations he passed. When he approached Petersburgh Junction he looked for the red flag, and there was none. He would naturally conclude that the dispatcher did not want him to stop there. The dispatcher knew best. That he was not to meet No. 6 there. That he was not to wait for the passenger train there. That he must run on to the next station. The jury must decide whether he was acting carefully, according to the lights he had; whether, notwithstanding his best judgment, he was misled by the fatal omission of the red flag; whether, notwithstanding his high speed, his knowledge of the schedule time of trains 6 and 33, and the 10-minutes rule, everything would have gone well, if the red flag had been in its proper place. If so, then the absence of the red flag was the proximate cause of his death. If the flag had been in its proper place, his high speed, on favorable grades, would not have been blameworthy. If the flag had been in place, he would have "slowed down" in approaching and stopping at Petersburgh Junction, and thus have made his arrival there appreciably later. Did the absence of the flag make his high speed blameworthy? The jury thought not. We think the verdict upon this part of the case justified by the evidence.

Johnson, the operator, was 17 years of age at the time of the accident. There was evidence that he had performed his duty for three or four months without fault or neglect, and was of good intelligence. The court left his competency to the jury, and refused to charge that upon this evidence the jury should find him competent. The point was made by the defendant that the first order to "flag and hold train 1 for orders" was in no way recalled or superseded, and that Johnson was negligent in not replacing the red flag after train No. 2 had passed west, and therefore Sutherland was injured by his co-employe's negligence. Now, it was possible that the jury might find that Johnson was negligent in not replacing the red flag, and it was possible that, in view of the orders following the first order, they might find that it was just such negligence as a youth of 17 would be especially liable to fall into. If they found that the fault was Johnson's, then they might well consider the question whether an operator of maturer judgment ought not to have been assigned to a station requiring such accuracy of interpretation and comparison of orders.

The judgment should be affirmed, with costs. All concur.